{¶ 1} This is an appeal from a Highland County Common Pleas Court judgment that modified parental rights and responsibilities and made Michael L. Morgan, defendant below and appellee herein, Michael Tyler Morgan's (d/o/b 10-3-89) residential parent. Lisa K. Morgan, nka Burns, plaintiff below and appellant herein, assigns the following error for review and determination:
 "THE TRIAL COURT ERRED IN GRANTING A MODIFICATION OF CUSTODY."
 {¶ 2} The parties married on April 12, 1980 and three children were born as issue of that marriage: Liticia Morgan (now emancipated), Michael Tyler Morgan (d/o/b 10-3-89) and Mikaela Morgan (d/o/b 6-17-94). When the parties divorced in 1997, the court designated appellant the residential parent for all three children.[2]
 {¶ 3} On January 4, 2005, appellee requested that the trial court modify its previous order and make appellee Michael's residential parent. Appellee alleged a change in circumstances had occurred and that a modification was in Michael's best interests. At the hearing before the magistrate, the proceedings appear to have focused primarily on appellee's failure to pay child support. Appellee admitted that he owes in excess of $9,000 and, despite cashing out an ESOP plan at his previous place of employment, he made no effort to satisfy his support obligation.[3] It was uncontroverted that appellee is unemployed, but he stated that he hoped to resolve a disability claim. Appellant, however, asserted that appellee is simply unwilling to work.
 {¶ 4} The magistrate conducted interviews with Michael — the first on January 11, 2005, and the second on April 13, 2005. Michael was emphatic that he wanted to live with his father. Michael explained that (1) he spent considerable time arguing with his mother and step-father, (2) his step-father openly told him that he "hated" appellee, (3) his mother is not supportive of him playing athletics (particularly baseball), (4) his mother required him to attend church services four or five times per week[4] and (5) some of the rules his mother imposed are too strict.[5]
 {¶ 5} On April 29, 2005, the magistrate recommended that appellee's motion be granted and that he be designated Michael's residential parent. The magistrate determined that a change in circumstances had occurred in that appellee now had a larger home that could accommodate his son and that Michael had specific reasons why he wanted to reside with his father. The magistrate also concluded that the change was in Michael's best interests. Appellant filed timely objections to the recommendation.
 {¶ 6} On July 8, 2005, the trial court overruled appellant's objections and adopted the magistrate's findings. Appellant appealed that judgment, but we dismissed it for lack of jurisdiction. We noted that the judgment did not include an actual order of disposition that stated the relief granted to the parties. See Burns v. Morgan,165 Ohio App.3d 694, 847 N.E.2d 1288, 2006-Ohio-1213, at ¶ 11. On March 24, 2006, the trial court issued its judgment that designated appellee as Michael's residential parent. This appeal followed.
 {¶ 7} Appellant asserts in her assignment of error that the trial court erred by ordering a modification of parental rights and responsibilities. We disagree.
 {¶ 8} R.C. 3109.04(E)(1)(a) provides:
 "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
 (i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.
 (ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.
 (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."
Pursuant to the statute, three factors guide a trial court's decision whether to modify the allocation of parental rights and responsibilities: (1) whether a change in circumstances has occurred since the previous decree, (2) whether a modification is in the child's best interests, and (3) whether the benefits resulting from the change outweigh any harm. Beaver v. Beaver (2001), 143 Ohio App.3d 1, 9,757 N.E.2d 41; Clark v. Smith (1998), 130 Ohio App.3d 648, 653,720 N.E.2d 973; Stover v. Plumley (1996), 113 Ohio App.3d 839, 842, 682 N.E.2d 683. In the case sub judice, both the magistrate and the trial court concluded that the factors had been satisfied. In this appeal, appellant contests the first and second factors.
 {¶ 9} First, appellant contends that the evidence did not establish that a sufficient "change in circumstances" had occurred with Michael. We are not persuaded.[6] During his interview with the magistrate, Michael gave very specific reasons for his desire to live with his father (that his father was more supportive of his interests in sports; that he could talk to his father about personal, sensitive, "stuff" than he could with his mother; that he was chaffing under his mother's rules (on movies, music and church attendance) and that he, his mother and stepfather always argued) Michael also claimed his mother was "jealous" of the relationship he had with his father, started to curtail his phone calls to his father and, on one occasion, listened in during a phone call.
 {¶ 10} We recognize that this matter has been before the court a year or two earlier on another motion to modify parental rights and responsibilities, and it is unclear how many of these issues were raised in that proceeding. After our review of the transcript of Michael's interview, however, we note the magistrate's observation that Michael is now older — fifteen and a half — and that he articulated "some very good reasons" for wanting to live with his father that he apparently had not previously voiced. The trial court determined that these factors demonstrated a sufficient change in circumstances and we find no error in that decision. It is important to note that a child's attainment of an age in which he can demonstrate "sufficient reasoning ability" to choose a residential parent has been deemed a sufficient "change in circumstances." See e.g. Dailey v. Dailey (1945), 146 Ohio St. 93, 95,64 N.E.2d 246; Perz v. Perz (1993), 85 Ohio App.3d 374, 376,619 N.E.2d 1094, at fn. 1; also see R.C. 3109.04(B) (Courts shall interview children as to their wishes on allocation of parental rights/responsibilities provided they demonstrate "sufficient reasoning ability.") Thus, Michael's wishes must be accorded substantial weight and it appears that the trial court did so. Of course, courts must examine each situation to determine the child's reasoning ability and to determine if the child's desires are based upon reasonable and appropriate grounds.
 {¶ 11} Appellant also asserts that the trial court's conclusion that it is in Michael's best interest for his father to be his residential parent constitutes reversible error.
Again, we are not persuaded. R.C. 3109.04(F)(1) provides in part:
 "In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
 (a) The wishes of the child's parents regarding the child's care;
 (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 (d) The child's adjustment to the child's home, school, and community;
 (e) The mental and physical health of all persons involved in the situation;
 (f) The parent more likely to honor and facilitate court — approved parenting time rights or visitation and companionship rights;
 (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 (h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child. . .
 (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 (j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
 {¶ 12} Appellant argues that the trial court erred by not considering that appellee failed to pay child support, id. at (g), and that he has mental health problems. Id. at (e). We disagree. The trial court actually discussed those factors (see pages 9-11 of the final entry). In particular, with regard to the support issue, the court opined that it was " concerned with the fact that Mr. Morgan appears to have put his needs ahead of the children." (Emphasis added.) At the same time, the court obviously found that his failure to pay child support was outweighed by other considerations including (1) Michael's articulable reasons for wanting to live with his father and (2) the trouble Michael was having with his mother and step-father.
 {¶ 13} We recognize and understand appellant's displeasure concerning appellee's $9,000 child support arrearage. However, the purpose of a custody determination is not to simply reward good behavior or to punish bad behavior. See generally Duning v. Streck, Warren App. Nos. CA2001-06-061 CA2001-06-062, 2002-Ohio-3167, at ¶ 40; McHenry v.McHenry (Dec. 16, 1999), Cuyahoga App. Nos. 75517 75550. A trial court must consider the best interests of a child which are, in fact, the polestar in any child custody matter. Keller v. Keller, Jackson App. Nos. 02CA19 03CA3, 2003-Ohio-6467, at ¶ 24. Here, the magistrate and the trial court obviously considered appellee's failure to comply with his support obligations, but determined that it was outweighed by Michael's reasons for wanting to reside with his father.
 {¶ 14} In the end, it must be understood and accepted that trial courts have broad discretion in custody matters and appellate courts may not disturb those decisions absent an abuse of discretion. SeeBragg v. Hatfield, 152 Ohio App.3d 174, 787 N.E.2d 44, 2003-Ohio-1441, at ¶ 24; Hinton v. Hinton, Washington App. No. 02CA54, 2003-Ohio-2785, at ¶ 9; Ferris v. Ferris, Meigs App. No. 02CA4, 2003-Ohio-1284, at ¶ 20. We note that an abuse of discretion is more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. See Landis v. Grange Mut.Ins. Co. (1998), 82 Ohio St.3d 339, 342, 695 N.E.2d 1140; State ex rel.Solomon v. Police Firemen's Disability Pension Fund Bd. ofTrustees (1995), 72 Ohio St.3d 62, 64, 647 N.E.2d 486. In applying the abuse of discretion standard, appellate courts must not simply substitute their judgment for that of the trial court.
See State ex rel. Duncan v. Chippewa Twp. Trustees (1995),73 Ohio St.3d 728, 732, 654 N.E.2d 1254; In re Jane Doe 1 (1991).57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181; Berk v. Matthews (1990),53 Ohio St.3d 161, 169, 559 N.E.2d 1301. To establish an abuse of discretion, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance of judgment, not the exercise of reason but instead passion or bias. Vaught v. Cleveland ClinicFound., 98 Ohio St.3d 485, 787 N.E.2d 631, 2003-Ohio-2181, at ¶ 13;Nakoff v. Fairview Gen. Hosp. (1996), 75 Ohio St.3d 254, 256,662 N.E.2d 1.
 {¶ 15} In the case sub judice, both the magistrate and the trial court issued lengthy, detailed opinions that balanced the evidence and the various R.C. 3109.04 factors before they concluded that the parental rights and responsibilities designation should be modified. It is possible that other courts could have weighed the evidence differently and come to the opposite conclusion, but that is not the standard of review. After our review of the record before us, we cannot conclude that the trial court abused its discretion by modifying the previous decree to designate appellee as Michael's residential parent.
 {¶ 16} Accordingly, based upon the foregoing reasons we hereby overrule appellant's assignment of error and affirm the trial court's judgment.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed. The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court, Division of Domestic Relations, to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Kline, J. McFarland, J.: Concur in Judgment Opinion
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.
[2] In October 1997, appellee became the residential parent for Liticia. He filed a motion in 2003 asking to be residential parent for Michael and Mikaela, but the court denied that motion.
[3] The cash-out of appellee's ESOP plan apparently netted in excess of $42,000. This sum was applied to the purchase of a new double-wide placed on property brought into his current marriage by his current wife.
[4] By the time of his second interview, Michael stated that his mother only required him to attend church services twice per week.
[5] Michael cited, in particular, his mother's rule that he could not watch any movies beyond those rated "PG" and that he could not listen to any music other than "Christian" music. Michael explained that he liked country music, but could not listen to it at his mother's home.
[6] We acknowledge and agree with appellant's argument that the trial court's focus on appellee's larger home is largely irrelevant. R.C.3109.04(E)(1)(a) speaks to change in the situation of the child or the residential parent. A change in circumstances for the non-residential parent is generally irrelevant, unless a shared parenting decree is involved (which is not the case here). Nevertheless, because the court also focused on other factors, we do not base our decision on that issue.